UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

YOANDY FERNANDEZ MORALES,

Plaintiff,

v.

ROBERT HARTMAN, *et al.*,

Defendants.

**Lead Case No.**

3:24-CV-00418-MMD-CLB

**Additional Case Nos.**

3:24-CV-00551-ART-CLB
2:24-CV-00439-RFB-NJK
2:24-CV-00439-RFB-NJK
2:24-CV-00407-ART-CLB
3:23-CV-00490-CLB
3:24-CV-00550-MMD-CSD
2:24-CV-00390-RFB-BNW
3:24-CV-00281-ART-CSD
3:24-CV-00582-ART-CLB
3:25-CV-00420-ART-CSD[1]

**ORDER GRANTING DEFENDANTS'
MOTION TO FILE STIPULATION TO
DISMISS AND MOTION TO SEAL**

[ECF Nos. 31, 34]

Currently pending before the Court is interested party Nevada Department of Correction's ("NDOC") motion for leave to file stipulations for dismissal, (ECF No. 31), and motion to seal, (ECF No. 34). For the reasons discussed below, both of NDOC's motions are granted.

I.    **BACKGROUND**

On October 20, 2025, the Court conducted an in-person global early mediation conference, and the parties reached a settlement. (ECF Nos. 16, 17.) Plaintiff Yoandy Fernandez Morales ("Morales") agreed to settle ten of his pending cases in exchange for:

[1]    The Court notes that all motions regarding this settlement agreement were filed in the lead case, 3:24-CV-00418-MMD-CLB. However, a copy of this order has been docketed in each case encompassed by the settlement agreement to ensure the stipulations to dismiss are appropriately filed and resolved.

(1) the NDOC would schedule Morales to see an outside internist medical doctor within 30 days and comply with that doctor's recommendations consistent with prison regulations; (2) NDOC would continue to comply with the medical recommendations and prescriptions in place as of the date of agreement; (3) Morales would be transferred to Lovelock Correctional Center ("LCC"); (4) Morales would be permitted to take his lamp, fan, mp3 player, and hot pot with him to LCC; (5) Morales would receive a used television from NDOC; and (6) NDOC would pay Morales $10,000. (ECF Nos. 16; 33 at 1-2.) The Court ordered NDOC to file either a stipulation to dismiss or a status report on or before December 19, 2025. (ECF No. 16.)

On December 19, 2025, NDOC filed a status report stating NDOC had paid Morales, provided him a used television, and transferred him to LCC as agreed. (ECF No. 19 at 1-2; *see also* ECF No. 18.) Additionally, Morales was permitted to transfer to LCC with his personal property as agreed, with the exception of his lamp and Score5 mp3 player. (ECF No. 19 at 2.) NDOC explained that when they inventoried Morales's property he was not in possession of a lamp or Score5, and so there was nothing to transfer. (*Id*; ECF No. 24-4 at 3.) As a gesture of good faith, LCC staff provided Morales with a used lamp. (ECF Nos. 19 at 2; 24-2 at 3.) Regarding the appointment with the outside internist, NDOC stated they were still waiting for authorization to schedule the appointment. (ECF No. 19 at 2.)

Morales objected on two grounds. First, Morales stated he had a Score5 listed on an earlier property inventory form, and NDOC's claim that he did not have one was a lie. (ECF No. 22 at 2.) Second, Morales argued NDOC was not complying with the recommendations and prescriptions that were in place on the date of the settlement. (*Id.* at 3-5.) Morales listed several medications he believed NDOC was improperly refusing to give him. (*Id.*)

The Court held a hearing to address the disputed terms of the agreement. (ECF No. 23.) The Court explained to Morales that the agreement regarding his property was only that he was permitted to take the items already in his possession with him to LCC,

and not that NDOC had to provide him with those items if he did not already have them. (*Id.*) Thus, Morales was not entitled to a new Score5 under the terms of the agreement. (*Id.*) As to the delay in scheduling Morales to see an internist, NDOC explained that due to an oversight Morales was scheduled to see two specialists instead of the internist. (*Id.*) NDOC stated they would have the appointment scheduled within the week. (*Id.*) The Court stated it would oversee the settlement agreement and ordered NDOC to submit a status report. (*Id.*) The Court ordered NDOC to confirm Morales had been scheduled to see the internist, to submit an affidavit from medical staff confirming Morales was receiving his prescriptions as agreed, and an affidavit verifying Morales's property. (*Id.*) The Court also asked, but did not require, NDOC to provide Morales with a new Score5. (*Id.*)

NDOC filed a status report with the affidavits as ordered, and confirming Morales had been scheduled to see the internist. (ECF No. 24 at 2.) The property sergeant at LCC submitted an affidavit confirming Morales did not have a lamp or Score5 with him when he arrived at LCC. (ECF No. 24-2 at 3.) The property sergeant issued Morales a lamp as a gesture of good faith, but stated he could not issue Morales a Score5. (*Id.*) The property sergeant explained Score5's are formatted for the individual inmate by a third-party through an extensive process and LCC was not able to do that for Morales. (*Id.*) Regarding Morales's prescriptions, NDOC's medical director submitted an affidavit stating Morales had 12 active prescriptions on the date the settlement agreement was signed, and that Morales was still receiving all 12. (ECF No. 24-3 at 3.) Morales again objected. Morales maintained that NDOC was lying about the Score5 and about him still receiving his prescriptions. (*See* ECF No. 27 at 1-8.)

The Court held another hearing and informed the Parties that based on the record it appeared NDOC had complied with the terms of the settlement agreement. (ECF No. 30.) However, to ensure that was correct, the Court ordered NDOC to submit a motion requesting to file the stipulation to dismiss, which Morales would have a final opportunity to object to if he disagreed with any of NDOC's assertions. (*Id.*) NDOC filed their motion

3

as ordered, (ECF No. 31), Morales opposed, (ECF No. 32), and NDOC replied, (ECF No. 33).

## II.  DISCUSSION

In his opposition, Morales concedes that NDOC has complied with all of the terms of the settlement agreement with two exceptions. (ECF No. 32 at 3-4.) First, Morales maintains he had a Score5 that was not transferred with him to LCC. (*Id.* at 4.) Second, Morales states that although he did see an internist, NDOC is not complying with the internist's recommendations as required. (*Id.*) The Court will address each in turn.

### A.  Score5

To support his argument that NDOC is lying about his Score5, Morales includes two of his property inventories. The first one was filled out when he was placed in segregation in April 2025 and reflects he had one Score5. (ECF No. 22 at 8.) The second one was filled out when Morales was transferred to LCC and reflects Morales did not have a Score5. (*Id.* at 9.) Morales argues his property was held by prison staff from the time he was placed in segregation until he was transferred to LCC, which demonstrates he did in fact have a Score5 that prison staff refused to transfer. (ECF No. 32 at 4.) NDOC does not address this argument directly. Rather, NDOC argues they were only obligated to permit Morales to take his Score5, assuming he had one, to LCC with him, not provide him with a new one. (ECF No. 33 at 2.) Because Morales's pre-transfer inventory shows he did not have a Score5 there was nothing for NDOC to do and they complied with the settlement agreement. (*Id.*) The Court agrees with NDOC.

As the Court has already explained, the settlement agreement did not require NDOC to provide Morales with a new Score5. NDOC was only obligated to allow Morales to take his Score5, assuming he had one, to LCC when he was transferred. The Court acknowledges the April 2025 property inventory reflects Morales had a Score5 at that time. (ECF No. 22 at 8.) However, what happened to that Score5 between April and when Morales was transferred is not part of the settlement agreement, and therefore not properly before the Court.

Even if it were, however, the Court is not persuaded that NDOC acted in bad faith. Morales contends prison staff did something to his Score5 because they were in exclusive control of his property from April until he was transferred. The problem with this argument is that there are several differences between the two property inventories, not just the missing Score5. For example, the April inventory shows Morales had one set of headphones, one headphone extension, and no coax cables. (*Id.*) But his November inventory shows he had three sets of headphones, three headphone extensions, and one coax cable. (*Id.* at 9.) There are additional examples the Court will not recount here. These additional discrepancies suggest Morales's property was not sitting idly in the property room while he was in segregation as he contends. Rather, it appears his property was being used and added to during that time, which undercuts his argument NDOC fraudulently removed the Score5 from Morales's inventory sheet.

In sum, the settlement required only that Morales be permitted to take his Score5 with him to LCC assuming he already had one, not provide him with one to take to LCC. The Court therefore finds NDOC has complied with the settlement agreement as to the transfer of Morales's property. To the extent Morales believes prison staff forged his pre-transfer property inventory, Morales must pursue that claim through the appropriate channels.

### B.    Internist Recommendations

The Court will next address whether NDOC has complied with the recommendations made by the internist Morales saw. Before addressing the substance of the parties' arguments, however, the Court will quickly address NDOC's motion to seal. (ECF No. 34.)

#### 1.    Motion to Seal

To support their argument that they complied with the internist's recommendations, NDOC filed a portion of Morales's medical records under seal. (ECF Nos. 34, 35.) When a party seeks to file a document under seal, there are two possible standards the party must address: the compelling reasons standard or the good cause standard. *See Ctr. for*

*Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096-97 (9th Cir. 2016). The choice between the two standards depends on whether the documents proposed for sealing accompany a motion that is "more than tangentially related" to the merits of the case. *Id.* at 1099. Here, NDOC seeks to file medical records in connection with their motion to file the stipulation to dismiss, which are "more than tangentially related" to the merits of the case. The compelling reasons standard therefore applies.

Under the compelling reasons standard, "a court may seal records only when it finds 'a compelling reason and articulate[s] the factual basis for its ruling, without relying on hypothesis or conjecture.'" *United States v. Carpenter*, 923 F.3d 1172, 1179 (9th Cir. 2019) (quoting *Ctr. for Auto Safety*, 809 F.3d at 1096-97) (alteration in original). Finding a compelling reason is "best left to the sound discretion" of the Court. *Ctr. for Auto Safety*, 809 F.3d at 1097 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 599 (1978)). Courts generally defer to the judgment of prison officials in the matters of security. *Bell v. Wolfish*, 441 U.S. 520, 547 (1979); *see also Norwood v. Vance*, 591 F.3d 1062, 1066 (9th Cir. 2009).

Here, Morales's medical records contain sensitive information related to his medical history. Balancing the need for the public's access to information regarding these medical records against the need to maintain confidentiality the Court finds sealing Morales's medical records is appropriate and grants NDOC's motion.

### 2. Parties' Arguments

The Court will now address the merits of the parties' arguments. Morales argues NDOC has denied "all the treatments and medication" recommended by the internist, (ECF No. 32 at 3), while NDOC argues they are in full compliance. As an initial matter, the issue of whether NDOC is following the internist's recommendations was not an issue that was previously raised by the parties and has no bearing on whether NDOC can file the stipulations to dismiss. Pursuant to the global settlement agreement, to file the stipulations to dismiss in the various cases at issue, NDOC was *only* required to show

they had *scheduled* Morales to see the outside internist, which they have done.[2] It is undisputed Morales saw the outside internist on January 15, 2026. (ECF No. 35-1 at 3-6.) NDOC has therefore complied with the terms of the agreement as to the outside internist.

However, even assuming *arguendo* that this is before the Court, Morales's argument is meritless. The internist recommended Morales continue with his atorvastatin prescription and continue taking vitamin D3. (ECF No. 35-1 at 2.) Morales's medical records reflect that at the time of his appointment he had an active prescription for both. (*Id.* at 7-9.) Morales complains he is not receiving several other medications, (ECF No. 32 at 8-10), however the internist specifically deferred any recommendations about those medications to specialist doctors, (ECF No. 32 at 3). NDOC was therefore not required to prescribe those medications under the terms of the settlement agreement. Accordingly, the NDOC has complied with all necessary requirements under the parties' global settlement agreement for the filing of the stipulation to dismiss and entered by the Court.

**III.    Conclusion**

**IT IS THEREFORE ORDERED** that NDOC's motion to seal, (ECF No. 34), is **GRANTED**.

**IT IS FURTHER ORDERED** that NDOC's motion for leave to file the stipulations for dismissal in each of the cases subject to the global settlement agreement, (ECF No. 31), is **GRANTED**.

**DATED**: March 2, 2026

_____
UNITED STATES MAGISTRATE JUDGE

---

[2]    The Court acknowledges that the settlement agreement does require NDOC to comply with the internist's recommendations insofar as they comport with NDOC policy. However, there was no expectation the Court would oversee the settlement to ensure the internist's recommendations were followed. To do so would mean overseeing the settlement for months on end. That is not the Court's role. This does not mean Morales has no way to enforce that term, or any other term of the agreement he feels has not been fulfilled. Indeed, if Morales believes NDOC has not fulfilled their obligations, he remains free to pursue litigation in state court for a breach of contract as the Court advised him when he entered into the settlement agreement.